**LEWIS BRISBOIS BISGAARD & SMITH LLP**
JEFFREY S. RANEN, SB# 224285
E-Mail: Jeffrey.Ranen@lewisbrisbois.com
DEREK S. SACHS, SB# 253990
E-Mail: Derek.Sachs@lewisbrisbois.com
KELLEY M. FOX, SB# 309272
E-Mail: Kelley.Fox@lewisbrisbois.com
633 West 5th Street, Suite 4000
Los Angeles, California 90071
Telephone: 213.250.1800
Facsimile: 213.250.7900

Attorneys for Defendants Belmont Village, L.P., Belmont Village Aliso Viejo CA LP, Belmont Village Berkeley, LLC, Belmont Village Thousand Oaks CA LP

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

FATIMA GOODARZI, individually, and on behalf of other members of the general public similarly situated,

Plaintiff,

vs.

BELMONT VILLAGE, L.P., a Delaware limited partnership; BELMONT VILLAGE ALISO VIEJO CA LP, a Delaware limited partnership; BELMONT VILLAGE BERKELEY, LLC, a Delaware limited liability company; BELMONT VILLAGE THOUSAND OAKS CA LP, a Delaware limited partnership; and DOES 1 through 10, inclusive,

Defendants.

Case No.:

Superior Court Case No. 20STCV15572

[Assigned for All Purposes to: The Hon. Daniel J. Buckley, Dept. 1]

**DEFENDANTS' NOTICE OF REMOVAL OF CLASS ACTION**

Action Filed: April 22, 2020
Trial Date: None Set

**PLEASE TAKE NOTICE** that Defendants Belmont Village, L.P., Belmont Village Aliso Viejo CA LP, Belmont Village Berkeley, LLC, and Belmont Village Thousand Oaks CA LP (collectively, "Defendants"), hereby remove the above-captioned action from the Superior Court of the State of California, for the County of Los Angeles, to the United States District Court for the Central District of

California under 28 U.S.C. §§ 1332, 1441, 1446, and 1453. In support of this Notice of Removal, Defendants state as follows:

1. Removal is proper in this case because this Notice of Removal demonstrates that all requirements for removal under 28 U.S.C. §§ 1332(d) and 1453) pursuant to the Class Action Fairness Act ("CAFA") are met.

2. On April 22, 2020, Plaintiff Fatima Goodarzi ("Plaintiff") commenced this putative class action against Defendants by filing a Class Action Complaint ("Complaint") in the Superior Court of the State of California, for the County of Los Angeles, bearing the case number 20STCV15572. The Complaint alleges ten causes of action for: (1) Unpaid Overtime; (2) Unpaid Minimum Wages; (3) Failure to Provide Meal Periods; (4) Failure to Authorize and Permit Rest Breaks; (5) Non-Compliant Wage Statements and Failure to Maintain Payroll Records; (6) Failure to Timely Pay Final Wages at Termination; (7) Failure to Timely Pay Wages During Employment; (8) Unreimbursed Business Expenses; (9) Unlawful Business Practices § 17200, *et seq.*; and (10) Unfair Business Practices § 17200, *et seq.*

3. Plaintiff first served the Complaint on Defendants Belmont Village, L.P. and Belmont Village Berkeley, LLC on April 29, 2020. Declaration of Leslie White ("White Decl."), ¶ 3. Plaintiff served the Complaint on Defendant Belmont Village Thousand Oaks CA LP on May 13, 2020. White Decl., ¶ 4. To date, Belmont Village Aliso Viejo CA LP has not been served with the Complaint. White Decl., ¶ 5. Accordingly, this Notice of Removal is timely filed within thirty days of service of process. 28 U.S.C. § 1446.

4. The Superior Court of the State of California, County of Los Angeles, is located within the Central District of California. Thus, venue is proper under 28 U.S.C. § 84(a) because this is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

5. No previous application has been made for the relief requested herein.

6. Pursuant to 28 U.S.C. § 1446(a), all process, pleadings, and orders that

have been filed, served, or received by Defendants in this action are attached hereto. Specifically:

a. A true and correct copy of the Complaint, filed April 22, 2020 is attached hereto as Exhibit 1.

b. True and correct copies of the Summons and other notices served therewith are attached hereto as Exhibit 2.

c. True and correct copies of Plaintiff's Proof of Service of Summons on Defendants filed on April 29, 2020 are attached hereto as Exhibit 3.

d. A true and correct copy of Defendants' Answer, filed in state court and served on Plaintiff on May 29, 2020, is attached hereto as Exhibit 4.

7. A true and correct copy of this Notice of Removal will be served upon all parties and filed with the Clerk of the Superior Court of the State of California, County of Los Angeles, in accordance with 28 U.S.C. § 1446(d).

## I. REMOVAL IS PROPER DUE TO THE JURISDICTION CONFERRED UNDER THE CLASS ACTION FAIRNESS ACT

8. This case is subject to removal under the CAFA of 2005. Pub. L. No. 109-2, 119 Stat. 4. 28 U.S.C. §§ 1332(d) and 1453.

9. CAFA grants federal district courts jurisdiction over civil class action lawsuits in which any plaintiff is a citizen of a state different from any defendant, and where the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs. 28 U.S.C. § 1332(d).

10. Under CAFA jurisdiction, unlike other diversity jurisdiction cases, "no antiremoval presumption attends cases invoking CAFA." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).

11. Plaintiff purports to bring this suit on behalf of non-exempt, hourly-paid current and former employees of Defendants within the State of California. Complaint, at ¶ 40. This class case, brought under California *Code of Civil Procedure* section 382, is a statute similar to a class action as defined in Rule 23 of

the Federal Rules of Civil Procedure. 28 U.S.C. § 1332(d)(1)(B).

12. Specifically, this Court has jurisdiction over this case under CAFA because it is a civil putative class action wherein: (1) there are 100 or more members in Plaintiff's proposed class; (2) Defendants are not a state, state official, or other governmental entity; (3) there is minimal diversity between at least one member and one defendant; and (4) the aggregate amount in controversy exceeds $5,000,000.00. Thus, this Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d) and 1453(b).

**A. <u>The Putative Class Size Consists of More than 100 Members.</u>**

13. The aggregate number of class members in Plaintiff's proposed class of California hourly paid, non-exempt employees employed from April 22, 2016 to the present is approximately 5,289. Declaration of Bonnie Gore ("Gore Decl."), ¶ 5. This is greater than the requisite 100 members required under 28 U.S.C. § 1332(d)(5)(B).

**B. <u>The Defendants Are Not Government Entities.</u>**

14. Defendants are not states, state officials, or any other government entities. White Decl., ¶ 6.

**C. <u>There is Minimal Diversity of Citizenship Between The Parties.</u>**

15. At least one member of the proposed class is a citizen of a state different from Defendants. 28 U.S.C. § 1332(d)(2)(A).

16. For purposes of diversity, a natural person is a "citizen" of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). A person's domicile is the place they reside with the intention to remain or to which they intend to return. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

17. According to the Complaint, Plaintiff Fatima Goodarzi is a resident of the State of California and worked and earned wages from Defendants in California from May 2019 to February 2020. Complaint ¶ 4. This allegation establishes that

she is a citizen of the State of California. *See Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986) (allegations of residency can create a rebuttable presumption of domicile supporting diversity of citizenship).

18. Likewise, the members of the proposed class are Defendants' current and former employees within the State of California. Complaint ¶ 40.

19. For purposes of determining diversity under CAFA, limited partnerships and limited liability companies are treated as "unincorporated associations."[1] *Ramirez v. Carefusion Res., Ltd. Liab. Co.*, 2019 U.S. Dist. LEXIS 112995, No. 18-cv-2852-BEN-MSB, at *3-4 (S.D. Cal. July 1, 2019), citing *Ferrell v. Express Check Advance of South Carolina LLC* 591 F.3d 698, 705 (4th Cir. 2010), *Marroquin v. Wells Fargo, LLC,* 2011 U.S. Dist. LEXIS 10510, 2011 WL 476540, at *2 (S.D. Cal. Feb. 3, 2011) (treating an LLC as an unincorporated association under CAFA), *Davis v. HSBC Bank Nevada, N.A.*, 557 F.3d 1026, 1032, n. 13 (9th Cir. 2009) (applying § 1332(d)(10) to a limited partnership).

20. Defendant Belmont Village, L.P., an unincorporated association, is a citizen of the state where its principal place of business is located and the state under whose law it is organized. 28 U.S.C. § 1332(d)(10). Defendant Belmont Village, L.P. is the legal employer of all employees at the Belmont Communities in California. White Decl., ¶ 7. Defendant Belmont Village, L.P. is a limited partnership organized under the laws of Delaware. White Decl., ¶ 7. At all relevant times, its principal place of business and corporate headquarter is located in Houston, Texas. White Decl., ¶ 7. As such, Defendant Belmont Village, L.P. is a citizen of Delaware and Texas.

21. Belmont Village Aliso Viejo CA LP, an unincorporated association, is

[1] The citizenship of limited partnerships and limited liability companies may be treated differently in other situations, but as the Fourth Circuit explained in *Ferrell*, for purposes of CAFA, they are treated as an "unincorporated association."

a citizen of the state where its principal place of business is located and the state under whose law it is organized. 28 U.S.C. § 1332(d)(10). Belmont Village Aliso Viejo CA LP is the operator of the Belmont Village community in Aliso Viejo, California. White Decl., ¶ 8. Belmont Village Aliso Viejo CA LP is a limited partnership organized under the laws of Delaware. White Decl., ¶ 8. At all relevant times, its principal place of business and corporate headquarter is located in Houston, Texas. White Decl., ¶ 8. As such, Defendant Belmont Village Aliso Viejo CA LP is a citizen of Delaware and Texas.

22. Belmont Village Berkeley, LLC, an unincorporated association, is a citizen of the state where its principal place of business is located and the state under whose law it is organized. 28 U.S.C. § 1332(d)(10). Belmont Village Berkeley, LLC is the operator of the Belmont Village community in Albany, California. White Decl., ¶ 9. Belmont Village Berkeley, LLC is a limited liability company organized under the laws of Delaware. White Decl., ¶ 9. At all relevant times, its principal place of business and corporate headquarter is located in Houston, Texas. White Decl., ¶ 9. As such, Defendant Belmont Village Berkeley, LLC is a citizen of Delaware and Texas.

23. Belmont Village Thousand Oaks CA LP, an unincorporated association, is a citizen of the state where its principal place of business is located and the state under whose law it is organized. 28 U.S.C. § 1332(d)(10). Belmont Village Thousand Oaks CA LP is the operator of the Belmont Village community in Thousand Oaks, California. White Decl., ¶ 10. Belmont Village Thousand Oaks CA LP is a limited partnership organized under the laws of Delaware. White Decl., ¶ 10. At all relevant times, its principal place of business and corporate headquarter is located in Houston, Texas. White Decl., ¶ 10. As such, Belmont Village Thousand Oaks CA LP is a citizen of Delaware and Texas.

24. The diversity requirements of CAFA require only that the citizen of any member of the class be diverse from any defendant. Here, because the named

Plaintiff is a California citizen and because Defendants are citizens of Delaware and Texas, the "minimal diversity" requirement under CAFA is satisfied. 28 U.S.C. § 1332(d)(2)(A).

**D. The Amount in Controversy Requirement Is Satisfied.**

25. To remove a case under CAFA, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC*, 574 U.S. at 89. In determining the amount in controversy, courts may consider "evidence outside the complaint, including affidavits or declarations, or other summary judgment type evidence relevant to the amount in controversy" at the time of removal. *Ibarra v. Manheim Invs., Inc.*, 775 F. 3d 1193, 1997 (9th Cir. 2015) (internal quotations omitted). The "amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Communications, Inc.*, 627 F. 3d 395, 400 (9th Cir. 2010).

26. Defendants dispute that this class could ever be certified, and Defendants dispute that they are liable for any of Plaintiff's claims asserted in the Complaint. Nevertheless, the aggregate amount in controversy, exclusive of interests and costs, exceeds $5,000,000.00. 28 U.S.C. § 1332(d)(2), (6). Although Plaintiff does not plead a specific amount of damages, Defendants can demonstrate that the aggregate amount in controversy exceeds $5,000,000.00. *See Dart Cherokee Basin Operating Co., LLC*, 574 U.S. at 84 ("When the plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so.").

27. Plaintiff alleges that Defendants failed to pay Plaintiff and the putative class members for all hours worked, including minimum and overtime wages. Plaintiff additionally alleges that Defendants failed to provide Plaintiff and the putative class with meal and rest periods. Plaintiff further alleges that Defendants are liable for their failure to timely pay wages during employment, failure to provide

accurate wage statements, waiting time penalties, unreimbursed business expenses, and for unlawful and unfair business practices.

28. Plaintiff seeks the following relief on behalf of themselves and the putative class:

a. Compensatory damages for unpaid minimum and overtime wages;

b. Damages for unpaid meal and rest period premiums;

c. Penalties for inaccurate wage statements;

d. Penalties for failure to timely pay wages during employment;

e. Waiting time penalties;

f. Restitution under *Business and Professions Code* section 17200;

g. And reasonable attorneys' fees.

29. Defendants' notice of removal "need not contain evidentiary submissions." *Id.* at 84. In showing the amount in controversy, Defendants "may rely on reasonable assumptions." *Arias v. Residence Inn*, 936 F.3d 920, 922 (9th Cir. 2019). The amount in controversy is "simply an estimate of the total amount in dispute . . . . [and] [i]n that sense, the amount in controversy reflects the *maximum* recovery [a] plaintiff could reasonably recover" on a complaint at the time of removal. *Id.* at p. 927. Moreover, "[a]n assertion that the amount in controversy exceeds the jurisdictional threshold is not defeated merely because it is equally possible that the damages might be less than the requisite amount." *Ibid.* (quotation marks omitted).

30. It is permissible for Defendants, when the Complaint does not provide clear indications of the amount in controversy, to rely on putative class members' employee data and reasonably assumed violation rates based upon the Complaint when determining the amount in controversy. *See ibid.* Defendants may rely on "a chain of reasoning that includes assumptions." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d at 1199. Defendants do not need to "provide evidence proving the assumptions

correct." *Arias*, 936 F.3d at 927. Instead, "assumptions made part of the defendant's chain of reasoning need not be proven; they instead must only have 'some reasonable ground underlying them.'" *Ibid.* (citation omitted).

1. **Failure to Provide Meal and Rest Periods**

31. *Labor Code* section 512, subdivision (a) provides that employers must provide meal periods, generally, for employees who work more than five hours per day, and that the meal period must be an uninterrupted 30 minutes where the employee is free from all duties. The California Wage Orders generally provide that employers shall offer a ten minute, uninterrupted rest period per four hours of work, or a major fraction thereof. *Brinker Restaurant Corp. v. Superior Court,* 53 Cal.4th 1004, 1028-29 (2012). *Labor Code* section 226.7 provides that employers who fail to provide a meal or rest period are subject to a premium payment of one hour's wages to the employee.

32. Plaintiff asserts that the meal and rest period class consists of all of Defendants' hourly paid, non-exempt California employees employed at any time within "four years prior to the filing of the initial complaint until the date of trial." Complaint, ¶ 40.

33. With respect to Plaintiff's meal periods claim, the Complaint alleges that Defendants had company-wide policies and/or practices of understaffing their assisted living facilities, having inadequate meal period coverage, and failed to schedule meal periods, which prevented Plaintiff and class members from taking all timely, uninterrupted meal periods to which they were entitled. Complaint, ¶ 69. Additionally, Defendants' policy requiring Plaintiff and class members keep a communication device on their person while on-site and respond to any calls at all times impeded Plaintiff and class members from taking full, uninterrupted meal periods to which they were entitled. Complaint, ¶ 70. Plaintiff further alleges Defendants' management adjusted Plaintiff's and the class members' time records and/or pressured employees to clock out for meal periods to reflect compliant meal

periods. Complaint, ¶ 71. Finally, Plaintiff alleges that she and class members worked shifts in excess of ten (10) hours without receiving an uninterrupted, second 30-minute meal period. Complaint, ¶ 72. Plaintiff alleges as a result of the aforementioned, Plaintiff and class members have not received premium pay for all missed, late, and interrupted meal periods. Complaint, ¶ 74.

34. With respect to Plaintiff's rest periods claim, the Complaint alleges Defendants' company-wide practices prevented Plaintiff and class members from being relieved of all duty to take their rest periods. Complaint, ¶ 80. Additionally, Defendants' failed to schedule rest periods, which further led to Plaintiff and class members not being authorized and permitted to take compliant rest periods. Complaint, ¶ 80. Further, Defendants maintained and implemented a company-wide on-premises rest period policy, which Plaintiff alleges prevented her and class members from being relieved of all duties for rest periods and caused them to perform work during rest periods. Complaint, ¶ 81. As a result of the aforementioned, Plaintiff alleges Plaintiff and class members did not receive all uninterrupted 10-minute rest periods to which they were entitled. Complaint, ¶ 82. Plaintiff further alleges Defendants have been engaged in a systematic, company-wide practice of not paying rest period premiums owed when rest periods are not authorized and permitted. Complaint, ¶ 83.

35. Based on the allegations that Defendants had a "policy or practice" of providing non-compliant meal and rest periods, Defendants reasonably assume one meal period violation per week and one rest period violation per week. *See Elizarraz v. United Rentals, Inc.*, 2019 U.S. Dist. LEXIS 62065, No. 2:18-CV-09533-ODW(JC), at *3-4 (C.D. Cal. Apr. 9, 2019) (finding violation rates of 50% for meal period claims reasonable in light of pattern and practice allegations); *Avila v. Kiewit Corp.*, 789 Fed.Appx. 32, 33-34 (9th Cir. 2019), (holding that words such as "frequently" or "regularly, but not always" can support an inference that 100% of employees received at least one violation.).

36. From April 22, 2016 through the present, Plaintiff employed approximately 5,289 employees who worked approximately 339,469 workweeks. Gore Decl., ¶ 5.

37. Utilizing a violation rate of one meal and one rest periods per week, each employee's current or final rate of pay—the premium payment—is multiplied by the number of workweeks that the employee worked within the statutory period. Summing this data for each employee reveals the amount in controversy for the meal period claim is at least approximately $5,602,336.94, and the amount in controversy for the rest period claim is at least approximately $5,602,336.94.

2. **Wage Statement Violations**

38. *Labor Code* section 226(a) requires that nine categories of information be included on each pay stub, including: (1) gross wages earned; (2) total hours worked by each employee; (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis; (4) all deductions; (5) net wages earned; (6) the inclusive dates of the period for which the employee is being paid; (7) the employee's name and identification number or the last four digits of the employee's social security number; (8) the name and address of the legal entity that is the employer; and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each holy rate by the employee. If there is a violation, the damages are governed by *Labor Code* section 226(e), which provides that "[a]n employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorneys' fees."

39. *Labor Code* section 226(e) claims for statutory penalties have a one-

year statute of limitations. *See Code Civ. Proc*. § 340(a). Thus, the applicable statute of limitations for this claim is from April 22, 2019 to present.

40. Plaintiff asserts in the Complaint that at "all relevant times, Defendants have knowingly and intentionally provided Plaintiff and Subclass members with uniform, incomplete, and inaccurate wage statements." Complaint, ¶ 87. Plaintiff alleges Defendants issued wage statements to Plaintiff and Subclass members that failed to correctly list gross wages earned, total hours worked, net wages earned, and all applicable hourly rates in effect during the pay period. Complaint, ¶¶ 87-88. Furthermore, Plaintiff alleges that Defendants failed, "on a company-wide basis, to keep accurate records of work period and meal period start and stop times." Complaint, ¶ 90.

41. Due to the language in the Complaint alleging that Defendants maintained a policy and practice of committing wage statement violations, Defendants assume a 100% violation rate for purposes of estimating damages.

42. There are approximately 2,996 non-exempt employees employed from April 22, 2019 to present. Gore Decl., ¶ 6. In that same time period, the total number of pay periods for all class members is approximately 55,346. Gore Decl., ¶ 6. The amount in controversy is calculated by multiplying the number of initial pay periods for each employee by the penalty rate, $50 and adding the remaining 52,350 pay periods multiplied by $100. No individual employee's penalty exceeded $4,000 in this calculation. This results in approximately $5,384,800.00 in penalties for the *Labor Code* section 226 wage statement claim.

3. **Waiting Time Penalties**

43. *Labor Code* sections 201 and 202 require that employees be paid all wages owed to them upon their termination from employment. *Labor Code* section 203 provides for waiting time penalties if an employer willfully violates these provisions. The penalties are assessed at an amount equal to the employee's daily wages for each day the wages remain unpaid, up to thirty days' wages. Cal. Lab.

Code § 203.

44. The waiting time penalties class consists of all of Defendants' hourly paid, non-exempt California employees employed within three years preceding the filing of the Complaint.

45. Plaintiff alleges in the Complaint that "Defendants had a company-wide practice or policy of paying departing employees their final wages on the next regular pay cycle, instead of adhering to the time requirements set forth in *Labor Code* sections 201 and 202." Complaint, ¶ 95.

46. The number of non-exempt employees terminated between April 22, 2017 through the present is approximately 2,904. Gore Decl., ¶ 7. The average hourly rate for these former employees is approximately $15.60 per hour. Gore Decl., ¶ 7.

47. Based upon Plaintiff's assertion that Defendants had a "policy or practice" of failing to pay all wages upon termination, Defendants assumed a 100% violation rate for the waiting time penalties. *See Kastler v. Oh My Green*, 2019 U.S. Dist. LEXIS 185484, No. 19-cv-02411-HSG, at p. *15-16 (a 100% violation rate is reasonable when based upon an unpaid wages claim because it assumes that every putative class member incurred damages for at least one other claim in the complaint).

48. Based on this violation rate, within the Employee Data, each employee's final hourly rate of pay was multiplied by eight hours to achieve their daily rate, then multiplied by 30 days. Summing this data for each employee reveals the amount in controversy for this claim to be approximately $10,890,358.25.

4. **Attorneys' Fees**

49. For CAFA cases, "attorneys' fees awarded under fee-shifting statutes or contracts are included in the amount in controversy." *Fritsch v. Swift Transp. Co. of Ariz.*, 899 F.3d 785, 794 (9th Cir. 2018). Further, "a court must include future attorneys' fees recoverable by statute or contract when assessing whether the

amount-in-controversy requirement is met." *Ibid*. "The Defendant retains the burden, however, of proving the amount of future attorneys' fees by a preponderance of the evidence." *Ibid*.

50. All of the *Labor Code* provisions for which Plaintiff seeks damages include the provision of attorneys' fees.

51. In general, a 25% benchmark of the potential damages constitutes the potential attorneys' fees. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (holding that where attorneys' fees are permissibly used in calculating the amount in controversy, a benchmark of 25% of the common fund was appropriate). Although this is not a per se rule, a 25% benchmark of attorneys' fees is generally reasonable. *Arias*, 936 F.3d at 928.

52. In the case at hand, even without including the attorneys' fees, the stated amount in controversy thus far, which includes only meal and rest period violations, waiting time penalties, and wage statement violations, is approximately **$27,479,832.13**. Applying a 25% benchmark to this sum results in attorneys' fees of approximately $6,869,958.

## II. SERVICE OF NOTICE ON PLAINTIFFS AND STATE COURT

53. Contemporaneous with the filing of this Notice of Removal in the United States District Court for the Central District of California, written notice of the removal will be given by the undersigned to Plaintiff's counsel of record, Bevin Allen Pike, Orlando Villalba, and Joseph Hakakian of Capstone Law, A Professional Law Corporation, and a copy of this Notice of Removal will be served upon all parties and filed with the Clerk of the Superior Court of the State of California, for the County of Los Angeles, where the action is currently pending, as required by 28 U.S.C. § 1446(d).

## III. NO OTHER DEFENDANTS HAVE JOINED THE ACTION

54. There are no other Defendants that have been named or served in this action, thus there are no other Defendants to join in this Notice of Removal.



WHEREFORE, Defendants respectfully remove this action from the Superior Court of the State of California, for the County of Los Angeles, bearing case number 20STCV15572, to this Court pursuant to 28 U.S.C. § 1332, 1441, 1446, and 1453.

DATED: May 29, 2020

LEWIS BRISBOIS BISGAARD & SMITH LLP

By: /s/ Derek S. Sachs
Jeffrey S. Ranen
Derek S. Sachs
Kelley M. Fox
Attorneys for Belmont Village, L.P., Belmont Village Aliso Viejo CA LP, Belmont Village Berkeley, LLC, Belmont Village Thousand Oaks CA LP